UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Margaret K. Ackerman,

        Plaintiff,                                      Civil No. 12-00042 (SRN/JSM)

v.

PNC Bank, National Association, Mortgage
Electronic Registration Systems, Inc., and        **MEMORANDUM OPINION**
Federal National Mortgage Association,                     **AND ORDER**

        Defendants.

---

Bryan R. Battina and William K. Forbes, Battina Law, PLLC, 700 Washington Avenue North, Suite 209, Minneapolis, MN 55401, for Plaintiff.

David A. Schooler and Ankoor Bagchi, Briggs and Morgan, P.A., 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for Defendants.

---

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiff Margaret K. Ackerman's Motion for Partial Summary Judgment. [Doc. No. 35.] For the reasons set forth below, the Court denies Plaintiff's Motion.

I.        BACKGROUND

On or about March 28, 2006, Plaintiff entered into a Note and Mortgage with Bell America Mortgage LLC related to the property she resided in located at 3257 Louisiana Avenue North, Crystal, Minnesota. (Bagchi Aff., Ex. A, Pl.'s Dep. at 22:8–24 [Doc. No. 47] (hereinafter "Pl.'s Dep."); Arthur Aff. ¶ 4, Exs. 1–2 [Doc. No. 46].) PNC Bank,

N.A. now holds the Note and Mortgage.[1]  (Pl.'s Dep. at 17:10–12, 16–18.)  Under the Note, Plaintiff was required to make a monthly payment of $1,148.38.  (Id. at 17:19–22; Arthur Aff. at Ex. 1 [Doc. No. 46].)

Beginning in 2008, Plaintiff had trouble making her monthly payments.  (Pl.'s Dep. at 17:23–18:5.)  On July 15, 2008, PNC alleges that it sent Plaintiff a letter informing her that she was in default of her payment obligations.  (Arthur Aff., Ex. 3 at PNC-ACK000879 [Doc. No. 46].)  On July 24, 2008, PNC claims that it sent another letter to Plaintiff providing notice of default.  (Id. at PNC-ACK000880.)  On September 25, 2008, PNC contends that it sent yet another letter to Plaintiff stating that "[f]ailure to cure the breach or default [of failing to make payments on her mortgage by October 25, 2008] will result in the acceleration of the maturity date of the Note."  (Id. at PNC-ACK000883.)  Plaintiff claims that she did not receive these letters and that they were returned via certified mail return receipt to PNC.  (Pl.'s Reply at 4 [Doc. No. 48].)

On November 7, 2008, PNC alleges that it sent a letter to Plaintiff informing her that her "loan has been reviewed by our foreclosure committee and has been approved for referral to the foreclosure department."  (Id. at PNC-ACK000886.)  In March 2009, Plaintiff filed for bankruptcy.  (Pl.'s Dep. at 53:14–16.)  Around July 2009, Plaintiff applied for a loan modification pursuant to the Making Home Affordable Program.  (Id. at 20:19–25.)  The application was denied because Plaintiff "[f]ailed to meet [the]

---

[1] Plaintiff's Note and Mortgage were previously held by National City Mortgage, which merged with PNC Bank, N.A.  (PNC's Opp'n Mem. at 2 n.1 [Doc. No. 45].)  Since Plaintiff does not dispute that PNC is National City Mortgage's successor, the Court will refer only to PNC throughout this Order.

program eligibility requirements." (Arthur Aff., Ex. 3 at PNC-ACK000901 [Doc. No. 46].)

In October 2009, Plaintiff and PNC entered into a Forbearance Agreement "in order to [allow Plaintiff] to bring her loan current and avoid the foreclosure." (Pl.'s Aff. ¶ 10, Ex. D [Doc. No. 37].) Under the Forbearance Agreement, PNC agreed to cancel the foreclosure sale scheduled on December 22, 2009, and agreed to accept $50.00 payments on November 10, 2009, December 1, 2009, January 1, 2010, February 1, 2010, March 1, 2010, and April 1, 2010. (Id.) The Forbearance Agreement stated that "[b]oth parties acknowledge that the payments . . . will not fully reinstate the loan in accordance with the note and mortgage, and [Plaintiff] will still owe additional sums for delinquent payments, costs and attorneys' fees incurred in the foreclosure." (Id.) The Forbearance Agreement also provided:

> If all payments are received in the amounts and on the dates as specified, [PNC] will review the loan for the purpose of possibly granting a loan modification agreement. Any such agreement shall be on terms acceptable to [PNC], will be in writing and must be executed by all parties to be effective.

(Id.) The Forbearance Agreement further stated that if the payments were not received "in a timely fashion" or the parties were unable to negotiate a loan modification within sixty days of Plaintiff's last payment, PNC had the right to terminate the Agreement by written notice and recommence foreclosure proceedings. (Id.)

Plaintiff alleges that after the Forbearance Agreement was executed, she contacted PNC in November 2009 and was instructed by a customer representative that she must make her payments before the tenth day of each month. (Pl.'s Aff. ¶ 11 [Doc. No. 37].)

3

Plaintiff claims that she relied on this oral representation from the customer service representative and made each payment due under the Forbearance Agreement before the tenth day of each month. (Id. ¶¶ 12–13.) Several days into April 2010, Plaintiff made the final payment due under the Forbearance Agreement. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 3 [Doc. No. 36].)

On April 7, 2010, PNC sent a letter to Plaintiff informing her that her request for "hardship assistance" had been rejected because she had "fail[ed] to remit the scheduled plan payments." (Arthur Aff., Ex. 3 at PNC-ACK000904 [Doc. No. 46].) The letter also stated that "[p]lease note that normal servicing of your loan will continue, including collection and foreclosure proceedings." (Id.) In response, Plaintiff alleges that she called PNC and was instructed by a customer service representative that the letter was a "mistake" and that the Forbearance Agreement "was still in effect." (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5 [Doc. No. 36]) (citing Pl.'s Aff. ¶ 20 [Doc. No. 37].)

On April 9, 2010, PNC alleges that it sent Plaintiff a letter noting that she had "recently discussed mortgage relief options with a Loan Collector." (Arthur Aff., Ex. 3 at PNC-ACK000905 [Doc. No. 46].) The letter also instructed Plaintiff that if she wanted to receive "hardship relief" she would need to provide PNC with "a hardship letter, recent pay stubs, a copy of the list agreement if property is for sale, and a completed financial form if you want to be considered for a relief option." (Id.) The letter further provided that "regular servicing of the mortgage will continue while your request is being reviewed and that eligibility is subject to lender approval." (Id.) Plaintiff asserts that she never received this letter from PNC. (Pl.'s Reply at 7 [Doc. No. 48].) Plaintiff further

disputes the accuracy of the letter because she claims she did not speak with PNC representatives about mortgage relief options until April 12, 2010. (Id. at 8.)

Plaintiff did not provide the requested materials to PNC in April 2010. PNC contends that Plaintiff was unable to do so because she had failed to obtain employment during the six-month forbearance period under the Agreement. (PNC's Opp'n Mem. at 5 [Doc. No. 45]) (citing Pl.'s Dep. at 34:15–35:8.) PNC argues that "[Plaintiff] admits that she had no employment from November 2009 through April 2010 (i.e., the time frame of the Forbearance Agreement." (Id. at 17) (citing Pl.'s Dep. at 34:15–35:11.) Plaintiff claims that the reason she never provided additional materials to PNC was because "she had not received any instructions, guidelines or anything explaining what she needed to do to modify her loan and that she did not know what their loan modification program entailed." (Pl.'s Reply at 9 [Doc. No. 48]) (citing Pl.'s Dep. at 57:7–14, 59:5–17, 148:20–28, 149:11–12.) Moreover, Plaintiff argues that her law firm, Ackerman Law Office, was "in existence and earning income" during this period. (Pl.'s Reply at 6 [Doc. No. 48].) Plaintiff also claims that she began working at a cow hoofing business and provided a copy of a check she received from the hoofing business to PNC on June 14, 2010. (Id. at 12) (citing Battina Suppl. Aff., Ex. 1 at PNC-ACK000483 [Doc. No. 49].)

Plaintiff filed her Complaint in Minnesota state court on December 17, 2010, alleging breach of contract, promissory estoppel, injunctive relief, a violation of Minn. Stat. § 580, negligent misrepresentation, consumer fraud, and deceptive trade practices. (Compl. at 6–10 [Doc. No. 1-1].) PNC filed a Notice of Removal to this Court on January 5, 2012. [Doc. No. 1.] On February 1, 2012, Plaintiff moved to remand the

action back to state court, which this Court denied on August 13, 2012. [Doc. No. 26.] The Court issued a Pretrial Scheduling Order on March 26, 2012, which provided that all discovery was to be completed prior to July 1, 2012. [Doc. No. 12.] Plaintiff filed this Motion for Partial Summary Judgment on September 6, 2012, requesting that the Court "set[] aside the wrongful foreclosure sale and return[] title of her home to her." [Doc. No. 35.] On September 7, 2012, the Court extended the Pretrial Scheduling Order and provided that discovery was to be completed prior to December 1, 2012. [Doc. Nos. 40–41.]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir.1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment

6

may not rest on mere allegations or denials, but must set forth facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### B. Breach of Contract

Plaintiff requests that the Court grant her Partial Motion for Summary Judgment and find that PNC breached the Forbearance Agreement. "A successful breach-of-contract claim under Minnesota law has four elements: '(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages.'" General Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013) (citing Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000)). While both parties agree that a contract was formed, PNC argues that genuine issues of material fact remain as to whether Plaintiff performed her obligations under the contract, whether PNC materially breached the contract, and whether Plaintiff suffered damages.

#### 1. Performance

In order to prevail on a breach of contract claim, the plaintiff must prove that she performed her obligations under the contract. Parkhill, 174 F. Supp. 2d at 961. The parties dispute whether Plaintiff made timely payments under the Forbearance Agreement. Plaintiff admits that "the issue of whether her payments were due on the 1st or 10th of the month is a fact question which this Court cannot rule upon for this motion." (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 7 [Doc. No. 36].) Plaintiff argues, however, that PNC is estopped from asserting she did not perform under the contract because a

7

representative told her, in a November 2009 phone call, that her payments were due by the 10th day of every month. (Id. at 8–9.) Plaintiff also argues that PNC's acceptance and retention of Plaintiff's late payment in April means that PNC has waived its ability to assert that she did not perform under the contract. (Id. at 11.) As such, Plaintiff contends that she performed her obligations under the Forbearance Agreement.

PNC responds that Plaintiff "failed to perform her express obligations under the Forbearance Agreement." (PNC's Opp'n Br. at 10 [Doc. No. 45].) Specifically, PNC argues that Plaintiff did not make all of her payments by the dates specified in the Forbearance Agreement and therefore it was entitled to schedule a foreclosure sale. (Id.) PNC asserts that it is not estopped from declaring a default following Plaintiff's late April 2010 payment because Plaintiff has only identified "hearsay and no admissible evidence supporting" Plaintiff's claim that a representative from PNC informed her she could make payments before the 10th of each month. (Id. at 11.) Furthermore, in response to Plaintiff's argument that PNC accepted her late payment, PNC claims that "there is no evidence that [Plaintiff] sent payment late in reliance on a supposed ability to do so—which, again, would have been unreasonable under the express terms of the Forbearance Agreement." (Id. at 12.)

In response to Plaintiff's waiver argument, PNC cites <u>Valspar Refinish, Inc. v. Gaylord's, Inc.</u>, where the Minnesota Supreme Court stated that "[w]aiver generally is a question of fact, and '[i]t is rarely to be inferred as a matter of law.'" 764 N.W.2d 359, 367 (Minn. 2009) (citations omitted). Moreover, PNC argues that waiver is not applicable here because "[Plaintiff] promised to make forbearance payments by the first

of each month; in early April 2010 PNC provided an unequivocal notice of default and termination following [Plaintiff]'s untimely April 2010 payment; and [Plaintiff] knew as of April 14, 2010, and PNC's counsel confirmed in writing by late April or early May 2010, that a foreclosure sale was scheduled for June 17, 2010." (Id. at 14–15.) As such, PNC argues that there is a fact issue as to whether PNC intended to waive its right to proceed with the foreclosure sale.

The Court agrees that genuine issues of material fact remain as to whether Plaintiff performed her obligations under the contract, thus precluding the entry of summary judgment. The parties dispute whether a PNC representative informed Plaintiff that she could make her payments under the Forbearance Agreement before the 10th of each month. The parties also dispute whether PNC is estopped from claiming Plaintiff did not perform under the contact based on fact issues about whether conversations occurred between Plaintiff and PNC and whether Plaintiff's reliance on the alleged conversations were reasonable. Additionally, fact issues exist as to whether PNC waived its right to claim that Plaintiff did not perform under the Forbearance Agreement, such as whether PNC properly provided notice of default and termination of the Forbearance Agreement following Plaintiff's late April 2010 payment. For these reasons, the Court finds that there are genuine issues of material fact as to whether Plaintiff performed under the Forbearance Agreement.

### 2. Material Breach

In order to demonstrate a breach of contract claim under Minnesota law, a plaintiff must prove that there has been a material breach. See, e.g., General Mills Operations,

9

703 F.3d at 1107 (citing Parkhill, 174 F. Supp. 2d at 961);Boatwright Construction, Inc. v. Kemrich Knolls, 238 N.W.2d 606, 607 (1976) (breach must be material). A material breach is "[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages." BOB Acres, LLC v. Schumacher Farms, LLC, 797 N.W.2d 723, 728 (Minn. Ct. App. 2011) (citation omitted). A material breach "goes to the root or essence of the contract." Id. (citation omitted). The Minnesota Supreme Court has held that even when express conditions of the contract are violated, the breach is not necessarily material. Id. (citing Boatwright, 238 N.W.2d at 607). "Whether an act or omission constitutes a material breach of a contract is a fact question." Sitek v. Striker, 764 N.W.2d 585, 593 (Minn. Ct. App. 2009), review denied (Minn. July 22, 2009).

Plaintiff contends that PNC breached the Forbearance Agreement "by not attempting to modify [Plaintiff]'s loan for a period of 60 days and providing written notice of termination before recommencing foreclosure proceedings." (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 13 [Doc. No. 36].) Plaintiff also maintains that PNC breached the Forbearance Agreement when it recommenced foreclosure proceedings on April 12, 2010. (Id. at 14.) Plaintiff argues that PNC's breach was material because "attempting to modify the loan so as to avoid foreclosure goes to the root or essence of the contract." (Pl.'s Reply at 22 [Doc. No. 48].)

PNC responds that it did not breach the Forbearance Agreement and Plaintiff received "every benefit of her bargain" because it allowed her to make six payments of

$50.00 in exchange for cancelling a December 2009 foreclosure sale on her home. (PNC's Opp'n Mem. at 16 [Doc. No. 45].) PNC also argues that Plaintiff was allowed to reapply for a loan modification in the 60-day period beginning in April 2010, but that Plaintiff failed to do so because "she did not have adequate employment." (Id.) Moreover, once Plaintiff applied for a loan modification, PNC denied the application. (Id.)

The Court agrees that genuine issues of material fact remain as to whether PNC materially breached the contract. There are fact issues as to whether PNC allowed Plaintiff to reapply for a loan modification within the 60-day period and whether Plaintiff had any additional income that would have been relevant to PNC's decision to grant her a modification. Moreover, the language in the Forbearance Agreement merely suggests that after Plaintiff made her six payments, PNC would review whether Plaintiff was eligible for a loan modification during the 60-day period. PNC never promised to provide Plaintiff with a modification, even if she had been able to obtain additional employment. Furthermore, there are genuine issues of material fact regarding whether Plaintiff obtained additional income to report to PNC under the Forbearance Agreement. The tax returns of Plaintiff's law firm from 2007 to 2009 show that the firm's business income was zero. (See Tr. at 14:1–25, 15:1–15 [Doc. No. 53].) Plaintiff has stated in an affidavit, however, that her law firm "is still operational and continues to earn income." (See Pl. Suppl. Aff. ¶ 18 [Doc. No. 50].)[2] There are also genuine issues of material fact

---

[2] Additionally, PNC noted at the hearing on Plaintiff's Motion for Partial Summary Judgment that additional discovery may be necessary to determine what her income was

11

as to when Plaintiff was paid for her work from the cow hoofing business. (Tr. at 16:14–25–19:1–8 [Doc. No. 53].) As such, the Court concludes that there are genuine issues of material fact as to whether PNC materially breached the Forbearance Agreement.

### 3. Damages

The final element of a breach of contract claim under Minnesota law is damages. Parkhill, 174 F. Supp. 2d at 961; see also Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578–79 (Minn. Ct. App. 2004) ("A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach."). Plaintiff argues that she is "seeking a summary judgment motion finding liability on her breach of contract claim," but that the issue of "damages is properly reserved for trial." (Pl.'s Reply at 23 [Doc. No. 48].) Because damages is a necessary element of the breach of contract claim itself under Minnesota law, the Court cannot find for Plaintiff in the absence of proof of damages.

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 35] is **DENIED**.

Dated: March 7, 2013  s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

during the relevant time period. (Tr. at 19:11–25 [Doc. No. 53].) Specially, PNC stated it intended to request information regarding Plaintiff's law firm's 2010 tax return. (Id.)